No. 29,510.

THE METROPOLITAN LIFE INSURANCE COMPANY OF NEW YORK, *Appellee*, v. THE MENNONITE MUTUAL FIRE INSURANCE COMPANY, *Appellant*. (LORAN KISTNER, Interpleader, *Appellee*.)

(293 Pac. 402.)

Opinion filed December 1, 1930.

*Ezra Branine, Alden E. Branine,* both of Newton, and *Frank W. Taylor,* of Iola, for the appellant.

*Kenneth H. Foust,* of Iola, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: This action was brought by plaintiff against the defendant upon an insurance policy issued by the defendant to one Loran Kistner as the insured. The policy had attached to it a mortgage clause in favor of the plaintiff as mortgagee. The insured, Loran Kistner, obtained leave of the court to interplead. Judgment was entered against the defendant in favor of plaintiff and of the interpleader. From this judgment defendant appeals.

The action was submitted to the court upon an agreed statement of facts and some oral and documentary testimony. From the record we glean the following:

That the interpleader, Loran Kistner, owned some land in Allen county upon which there were some improvements; that he made a loan on this land through the Commerce Trust Company, of Kansas City, acting as duly authorized agent of the plaintiff in this action; that the amount of the loan was $2,800 and was secured by a mortgage on the land; that the policy upon which suit was brought against defendant was issued March 22, 1926, for a term of three years. There was attached to the policy under date of May 20, 1926, a mortgage clause known as the "union mortgage clause," reading as follows:

"MORTGAGE CLAUSE WITH FULL CONTRIBUTION.

"Loss or damage, if any, under this policy shall be payable to the Metropolitan Life Insurance Company as mortgagee (or trustee or assign) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within-described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy. Provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

"Provided, also, that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall

come to the knowledge of said mortgagee (or trustee), and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

"This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right, on like notice, to cancel this agreement.

"In case of any other insurance upon the within-described property, this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee, or otherwise.

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of their claim.

"Attached to and forming part of policy No. 46280, Mennonite Mutual Fire Insurance Co. Dated May 20, 1926.

> P. W. BARTSCH, *Secretary.*
> EULATE B. ANDERSON, *Agt.*"

The defendant is a mutual insurance company and its premiums are paid by the assessment method. An assessment was due March 1, 1927, and notice of this assessment was sent to the insured, Loran Kistner, on that date.

The application for the policy in question, dated March 22, 1926, contained the following questions and answers:

"1. What title have you to these premises? Ans. Deed.

"2. How much encumbrance? To whom and when due? Ans. $2,800. Commerce Trust Company, K. C. Mo. 10 years."

At the date this application was submitted there was also of record against the property a mortgage under date of December 1, 1925, in the amount of $280; and another mortgage under date of December 28, 1925, against the same property in the amount of $700.

It appears further that on August 11, 1926, the Rumbel Lumber Company filed a mechanic's lien upon the real estate involved in this action for the sum of $1,250 for furnishing material. Also that on March 22, 1926, the defendant company issued another insurance

policy, which is not in controversy here, to the insured in the sum of $1,000, and that this policy was duly assigned to the lumber company as security on its mechanic's lien; that when notice of this assessment was mailed to the lumber company on March 1, 1927, under the last described policy, the assessment was not paid and the policy was permitted to lapse. On March 29, 1927, the lumber company received a policy in the amount of $1,300 from the Underwriters Exchange Insurance Company, which policy was fully paid after the fire hereinafter mentioned and there remained due on the lien against the real estate at the time of trial of this action the sum of $125.

The insured, Loran Kistner, received notice from the defendant insurance company of the assessment falling due March 1, 1927, in the amount of $8, but instead of paying this assessment he procured two other policies for $1,000 each on April 1, 1927, from the Preferred Risk Fire Insurance Company, of Topeka, and caused a mortgage clause to be attached thereto in favor of the plaintiff herein as mortgagee. Both of these policies were in full force and effect at the time of the fire hereinafter referred to, and at the time of the trial of this action there was pending in the same district court a suit brought by plaintiff herein, and Kistner, against the company which issued those policies, seeking collection thereon.

On October 22, 1927, the defendant insurance company notified the Commerce Trust Company as agent for plaintiff herein that its policy No. 46,280 issued to Loran Kistner would be canceled in ten days from that time unless the assessment of $8 was paid. The defendant also advised that a second notice had been sent to the insured at Moran, Kan., for this assessment and that it had received no reply. The Commerce Trust Company wrote the insured advising him of the notice so received from the defendant insurance company, calling his attention to the fact that his contract with the mortgagee called for $1,500 insurance and advising that the trust company was forwarding its check for $8 in payment of the assessment and requesting the insured to forward them check for that sum immediately. On October 31, 1927, the insured replied to the letter from the trust company as follows:

"This notice duly received and wish to state that you were too quick to respond to the notice which you received. Upon receipt of their notice to me in which they asked for an extra assessment of $8 together with the ordinary premium I deemed it a company of poor reliability that has to assess the

policyholders. In their notice they stated if the $8 was not paid by me in a certain number of days that the policy would be canceled, and which I presumed had been done long ago. Thinking the matter over, I thought I was perhaps as insecure with their policy as I would be with none. So I made arrangements with my local banker and had a new policy written before the date that they said theirs would be canceled. In so doing have fully fulfilled my contract with you. I will get your copy of the new policy, which you will notice was dated April 2, 1927, with the mortgage clause attached, and send in to you with this letter. You could have written me before sending the check to them as conveniently before as after and shouldn't have relied altogether on what they had to say as they were only looking after their own interest. Yours respectfully, LORAN KISTNER."

To the above letter the trust company, as agent for plaintiff, replied, advising the insured that he had completely misunderstood the arrangement with the insurance company in regard to the payment of premiums; that the $8 which became due March 1 was an assessment for his protection for the preceding year and not a premium for protection for 1927; that both he and the mortgagee had had the protection and the $8 was an earned premium and had to be paid either by him or the mortgagee, and again asked him to forward check for the amount. They further advised him they felt if he did not wish to keep his policy in force with the defendant company he owed them the courtesy of advising them of this fact.

To this the insured replied to the trust company on November 7, 1927, advising that he and the lumberman from whom he got the lumber to build the house had looked up a letter received by the lumberman at the same time he received his letter from the insurance company, and the letter advised they were assessing the policyholders $8 per thousand by order of the directors; that from the letter he received from the trust company he got the impression that the trust company thought he had never paid the premium, but that he had check showing he had paid it; that the assessment was an extra one; that since the company said the policy would be canceled in thirty days if he did not pay the assessment "why didn't they do it." That the thing for the trust company to do was to demand their money back and see that the policy was canceled; that he was not paying premiums on two policies.

On November 18, 1927, the trust company wrote the insurance company advising of the misunderstanding of the insured and asking whether there was any unearned premium on the policy. The insurance company, on November 21, 1927, replied that "the assured

is liable to any and all assessments under our premium note policy until such time as he surrenders the policy to this company for cancellation." This letter continued:

"The assured did not notify the company that he wanted the policy canceled, and did not return the policy for cancellation. Consequently the company would have been held liable for any and all losses occurring under the policy and would have been bound for the payment of same to the mortgage company by virtue of the terms of the mortgage clause attached to the policy.

"We can see no other escape for the assured but to pay to you the delinquent assessment of $8, and if he furnishes your company another policy to take the place of our policy, let him return our policy for cancellation, and he will then be refunded such unearned premium as may be due him on the basis of the short-rate concellation schedule. The unearned premium at this time would be $1."

On November 26, 1927, the dwelling house on which the policy in controversy was issued was totally destroyed by fire, and at the time of the fire it was of the fair value of $2,500.

On November 29, 1927, before it had any knowledge of the fire, the trust company again wrote the insured in reply to his letter of November 7, advising that they had taken up the matter with the insurance company to ascertain the status of his policy. They also sent him copy of letter received from the insurance company and further advised that on that same date (November 29) they were returning the policy to the insurance company for cancellation; that he would see from the letter from the insurance company that there was an unearned premium of $1 which they would ask the insurance company to return to them and which would be credited to his account, leaving a balance due of $7, for which they requested check. On the same date (November 29), and prior to the time the trust company had knowledge of the fire having occurred, it wrote a letter to the defendant insurance company and returned the policy, advising: "We are inclosing herewith the above policy for cancellation as we understand Mr. Kistner does not care to keep it in force since the other insurance was secured last April."

On November 30, 1927, check for the unearned premium of $1 was mailed by the insurance company to the trust company, together with a letter in which acknowledgment was made of receipt of the policy for cancellation.

On December 6, 1927, the trust company wrote to the insurance company acknowledging receipt of the check for $1 and advising

that on November 26 the dwelling had been destroyed by fire; that since the premium was advanced by the trust company on the policy and since the policy was not returned until November 29 for cancellation, three days after the occurrence of the fire, they would expect full settlement so far as they (the trust company) were concerned.

It appears from the testimony of the secretary of the defendant company that on November 21, 1927, the same date that the letter hereinbefore set out was written by the insurance company to the trust company, he made an entry on the original records of the insurance company canceling the policy in controversy as of November 21, 1927. However, no notice of this cancellation was sent either to the insured or to the mortgagee.

After a consideration of the foregoing facts and of the terms of the policy, the application therefor, the by-laws of the company, and the mortgage clause attached to the policy, all of which were introduced in evidence, the court rendered judgment as follows:

"First: That said plaintiff have and recover of and from said defendant, the Mennonite Mutual Fire Insurance Company, the sum of $1,000 with interest thereon from this date at the rate of six per cent per annum and for the costs of this action, and that $100 attorney's fee be allowed and taxed for plaintiff's attorney as a part of the costs of this action.

"Second: That said defendant is not entitled to be subrogated to all of the rights of said plaintiff on account of said insurance under the mortgage of said plaintiff and the indebtedness thereby secured to the amount and in the sum of said amount of insurance, to wit: $1,000; and that the said sum of $1,000 be credited and applied as a payment upon the mortgage indebtedness in favor of said plaintiff and against said interpleader."

The defendant urges a number of specifications of error, which may be summarized into the following:

1. That the court erred in rendering judgment in favor of plaintiff.

2. That the court erred in rendering judgment as it did in favor of the interpleader.

3. Assuming plaintiff is entitled to judgment against the defendant, then the court erred in finding and adjudging that defendant was not entitled to subrogation.

From the foregoing facts it readily appears that so far as the mortgagee (plaintiff herein) is concerned by reason of the mortgage clause attached to the policy in its favor, it could not be made to suffer because of neglect of the insured. The mortgage clause specifically provides that: "This insurance . . . shall not be in-

validated by any act or neglect of the mortgagor or owner of the within-described property."

In sending notice to the agent for plaintiff herein the insurance company took cognizance of this condition in the mortgage clause. In its letter of November 21, 1927, it again recognized the terms of the mortgage clause and called attention to the fact that it would be held liable to the mortgagee notwithstanding the failure of the assured to pay the premium. The mortgagee paid the premium, thereby keeping the policy in full force and effect. In the correspondence that passed between the insurance company and the agent for the mortgagee the insurance company pointed out that the policy would only be canceled upon return of the policy. This return was not made until three days after the fire had occurred and was then innocently returned by the agent of plaintiff without knowledge that a fire had occurred. The entry of cancellation on its records by the insurance company on November 21, 1927, without any notice to the insured or to the mortgagee, was of no avail. It was ineffectual and did not cancel the policy so far as the mortgagee was concerned. We conclude, therefore, that the defendant insurance company is liable on its policy to the plaintiff in this case and that portion of the judgment of the district court is correct.

Now, as to the judgment in favor of the insured we have an entirely different situation.

First of all it is clear that the insured did not pay the assessment. He thereby neglected to perform an act which was essential to keep the policy in force and effect so far as he was concerned.

Further, he violated certain terms of the policy set forth in article 18 of the by-laws which formed a part of that policy. This article provided that: "This entire policy shall be void . . . if the interest of the insured in the property be not truly and correctly stated in the application." It clearly appears in the application that the only encumbrance there listed against the property was the $2,800 mortgage to plaintiff herein. However, at the time the insured signed the application there was a second mortgage of $280 and also a third mortgage of $700 against the property; also a liability had been incurred against the property which later resulted in a mechanic's lien in the sum of $1,300, which had been paid at the time of the trial with the exception of a balance of $125. This

payment had been made by the proceeds of an insurance policy issued in favor of the holder of the mechanic's lien.

It therefore appears that the assured obtained the policy upon an application which did not correctly set forth his actual interest in the real estate and on that account the policy was void as to him on the date upon which it was issued.

Article 18 of the by-laws above referred to further provides:

"This entire policy, unless otherwise provided by agreement indorsed thereon or added thereto by the secretary, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy. . . ."

Now it clearly appears that on April 2, 1927, the insured took out two other policies of $1,000 each in another insurance company with the clear intent and purpose of discontinuing any insurance with the defendant and of substituting the new insurance with the mortgagee instead of that issued by defendant. However, he did not complete this substitution of the new policies for the old and get the transaction finished so as to bring about a cancellation of the policy in controversy as between the insurance company and the plaintiff. Nevertheless, he did have the additional insurance. He took these policies out in violation of that portion of article 18 last above quoted. He did not notify the defendant insurance company that he was taking out the additional insurance and took no steps to get its consent thereto. In fact, he ignored the defendant entirely and continued to so ignore it and manifested an attitude of antagonism and contempt for its security and ability to pay, until such time as a loss had been sustained. He then comes into court attempting to hold the insurance company upon a policy which he has clearly violated in the three respects, to wit: (1) Failure to pay premium; (2) misrepresentation of encumbrance; (3) taking out of additional insurance.

The appellee attempts to make some point of the fact that the court at the time he rendered his decision made a memorandum in which he stated it was apparent that the unearned premium had been incorrectly figured; that it should have been $2 instead of $1, and that on that account the policy was in force for a considerable time after the fire had occurred. This could not have the effect of binding the insurance company to the assured under the conditions shown in this record. The insurance company had a right, upon learning of the various respects in which the insured had violated

the conditions of the policy, to deny liability to him and tender back the unearned premium. If true that a mistake was made and this was incorrectly figured it was a matter which the court could very easily have corrected at the trial. At any rate, as far as this record shows, the insured never paid any part of the premium to keep this policy in effect, and he cannot therefore claim any benefit accruing from a mistake in figuring the amount of the unearned premium. It is clear that the interpleader had no right to recover in this action.

This leaves the other point made by appellant, which is that it is entitled to subrogation under the terms of the mortgage clause.

The last paragraph of the mortgage clause hereinbefore set out provides for subrogation in favor of the insurance company *pro tanto* to the security held by the mortgagee when a loss is paid for which the company is not liable to the mortgagor or owner. Under that portion of the mortgage clause it is clear that inasmuch as the defendant insurance company is not liable as to the mortgagor or owner of the property, but is liable to the mortgagee as between it and the defendant insurance company, it follows that it is entitled to full subrogation strictly in accordance with that portion of the mortgage clause set forth in the last paragraph above quoted.

It is therefore ordered that the judgment of the district court in favor of the plaintiff is hereby affirmed; that the judgment of the district court in favor of the interpleader is reversed and set aside and the district court is further directed to enter judgment herein in favor of the defendant insurance company, granting unto it full subrogation in accordance with the terms of the mortgage clause attached to its policy.