No. 35,964

Antone Drewicki, *Appellee* and *Cross-appellant*, v. Fidelity & Guaranty Fire Corporation, of Baltimore, Maryland (et al.), *Appellant*.

(142 P. 2d 806)

Opinion filed November 6, 1943.

*Lee Bond*, of Leavenworth, argued the cause for the appellant.

*Max L. Frederick*, of Leavenworth, argued the cause for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action on a fire insurance policy. The trial court overruled a motion of the plaintiff, Antone Drewicki, (commonly known as Antone Price) for judgment on the pleadings and sustained his motion that the defendant be required to elect upon which one of the two defenses he relied. Both parties have appealed.

After the formal allegations, the petition alleged that the policy in question was a renewal of a former policy issued by the agent of the defendant; that plaintiff had asked his wife to secure this policy from defendant's agent; that when it was first issued it was in the amount of $1,000 and in the name of plaintiff's wife and that he caused his wife to take the policy back to the agent and tell him to

reduce the amount to $500 and insert his name instead of his wife's name in it; that the agent did reduce the amount of the insurance but told the wife of plaintiff that the name would not make any difference. The petition then alleged that the plaintiff relied on these representations and that when this policy expired a renewal policy was taken out for the sole benefit of the plaintiff by the same method; that a new fire insurance policy was issued through the same agent, expiring on July 7, 1942, in the amount of $500 on the building in question and $800 on the contents; that it was in full force and effect on April 5, 1941. The petition then alleged that if the court should hold that the policy was in the name of plaintiff's wife it should be reformed to carry out the real intent of the parties, that is, that the policy was issued to plaintiff for his sole benefit; that on the morning of April 5, 1941, while the policy was in effect the building and contents were destroyed by fire; that he had submitted proof of loss in the sum of $500 for the building and $800 for the contents; that the defendant refused to pay it. Judgment was prayed against the defendant in the sum of $1,300, with interest.

An answer was filed to this petition denying the alleged conversation between the agent and Mrs. Price, alleging that the policy was issued in the name of Mrs. Price, that the fire was of incendiary origin; that she had been convicted of arson and that the policy was therefore void. A trial was had which resulted in the jury being discharged because it was unable to agree. At the request of the defendant insurance company Mrs. Price was made a party defendant subsequent to this trial and personal service was had upon her. A supplemental answer and counterclaim were then filed by the defendant. This is the answer at which the motions we are considering were directed. It admitted the formal allegations in the petition; then denied that the policy sued on was a renewal policy; denied that it ever had taken an application or issued a policy to the plaintiff or that it was ever represented to the defendant or its agent that anyone other than Mrs. Price had an insurable interest in the property. It further stated that about the 7th day of July, 1939, the agent of defendant had mailed to Mrs. Price a renewal of a policy issued by the agent to Mrs. Price in a fire insurance company other than defendant; that Mrs. Price had returned the policy to the agent and asked him to issue a new one increasing the amount of the insurance from $1,450 to $1,700; that the agent had written the policy upon which this action was brought to cover the property of

Mrs. Price from the 7th of July, 1939, until the 7th of July, 1942, and that at all times Mrs. Price had represented that she had an insurable interest in the property and it was issued solely to cover her insurable interest. The answer further alleged that neither the plaintiff nor Mrs. Price, his wife, had ever advised the defendant or its agent that the insurance was to cover anything other than her interest, but that on the 21st day of November, 1940, a building and loan company became the mortgagee in a mortgage on the land in question executed by plaintiff and his wife and that a representative of the loan company notified defendant's agent of the mortgage and asked that a standard mortgage clause be attached to the policy, and that the agent of the company thereupon placed a mortgage endorsement on the property and accepted notice that the title of the property insured under the policy was in the name of plaintiff and that neither plaintiff nor his wife ever consulted this defendant or its agent or agreed to the endorsement. The answer alleged that the policy was issued to Mrs. Price for the sole purpose of insuring the insurable interest described in the policy and denied that the company ever had any contractual relationship with plaintiff; that the fire was of incendiary origin and plaintiff's wife had been convicted of arson in the burning of the house and that this action was a fraud against the defendant and the policy was therefore void. The answer then alleged for a counterclaim against the plaintiff and the co-defendant, Mrs. Price, that the plaintiff and his wife had secured the mortgage from a building and loan company at Leavenworth, Kan., to secure their promissory note in the sum of $400; that the loan company had demanded of the defendant that it attach to the fire insurance policy a standard mortgage clause, a copy of which was attached to the answer, and that after the premises were destroyed by fire the loan association demanded of the defendant that it pay it under the standard mortgage clause the balance due on the mortgage of $402.83, which defendant was liable for, and in response to this demand the defendant had paid that amount to the loan company; that the loan company had duly executed articles of subrogation and assignment to defendant. The answer then alleged that by reason of the terms of the subrogation and assignment it became entitled to all of the rights of the loan company by virtue of the promissory note and mortgage. The answer further alleged that the plaintiff and his wife had failed to pay the interest on the note and taxes on the real estate for the years 1941 and 1942 and

had failed to keep the premises insured and by reason of these things the promissory note was due. The answer prayed that the plaintiff take nothing by the action and that the defendant insurance company recover $402.83 from plaintiff, with interest, and that such sum be declared a first lien on the property in question and that it be sold to satisfy the lien.

The plaintiff first filed a demurrer to the counterclaim on the ground that it was not a cause of action that could properly be pleaded as a setoff or counterclaim to the cause of action set out in plaintiff's petition; that it did not state facts sufficient to constitute any defense to the plaintiff's cause of action and that it was a separate and different cause of action founded upon another and different contract than that set out in plaintiff's petition. This demurrer was overruled February 12, 1943. About the same time the plaintiff filed a motion for judgment on the pleadings on the ground that the defendant in its answer and counterclaim had admitted that plaintiff was insured under the policy and had charged him with no fraud or other act voiding the policy; that when the defendant accepted notice that the title of the property insured stood in the name of plaintiff, by not canceling the policy it thereby waived the right to claim as a matter of law that the plaintiff was not insured. This motion was also overruled on the 19th day of February, 1943.

The plaintiff also filed a motion to require the defendant to elect upon which ground of defense contained in its supplemental answer it relied. The motion alleged that the inconsistencies were a denial by the defendant that the plaintiff was the insured in the policy, and the defense set out in the counterclaim that the defendant was subrogated and claimed the right to foreclose the note and mortgage against plaintiff because defendant had paid the amount of the note to the loan company. On the 17th of April, 1943, the trial court found that these defenses were inconsistent and sustained the motion and ordered the defendant to elect upon which of the defenses it would rely. The defendant appealed from this order on May 24, 1943. On June 11, 1943, the plaintiff attempted to file a cross-appeal from the order of February 19, 1943, overruling its motion for judgment on the pleading. We shall first deal with the defendant's appeal. It will be noted that the position of the defendant company is, first, that the insured named in the policy had no insurable interest in the property and it actually had no contract with the plaintiff; and second, that because it paid the mortgage company

after the property had been destroyed the amount of the loan it had made, with the property as security, it should have the right to foreclose the mortgage for its own benefit. The question is whether these two positions are inconsistent. Appellee argues that they are inconsistent under the rule announced in *Pinegar v. Webster*, 145 Kan. 44, 64 P. 2d 546. In that case two defenses to a mortgage foreclosure were pleaded. One was that the signatures on the note and mortgage were forgeries and the other was they were secured by fraud. That case is not in point here because clearly when the defendant in that action had proved that the signatures were forgeries, that is, that he had not signed the note and mortgage at all, he could not very well go ahead and prove that he had been induced by fraud to sign them. The proof of one prevented him from being able to prove the other. The rule is stated in *Taylor v. Robertson Petroleum Co.*, 156 Kan. 822, 137P. 2d 150. There this court held:

"To make actions inconsistent one action must allege what the other denies, or the allegation in one must necessarily repudiate or be repugnant to the other." (Syl. ¶ 5.)

We do not have that situation here. The defendant could prove its allegation as to the title of the property being in the plaintiff and this policy and all of its dealings being with his wife without offering any testimony that had the least bearing upon the liability of the insurance company to the mortgagee, as pleaded in the answer. The argument of plaintiff overlooks the real underlying reason for the relationship that existed between these parties. It is a very common relationship. Practically every mortgage company that loans money upon real estate requires that the buildings be insured. Everybody knows why that is. It would not do the mortgage company any good to have a mortgage upon a town lot which had been the site of a valuable building if when the time came to foreclose the mortgage the building had been consumed by fire. So the mortgage company requires that the buildings be adequately insured and that there be what is described as a loss payable clause attached to the policy, as there was in this case. This clause provided that the loss or damage, if any, under the policy should be payable to the loan company as its interest might appear and provided further that the insurance as to the interest of the mortgagee should not be invalidated by any act of the mortgagor or owner of the property or for any other of the several reasons which are enumerated. This is an ordinary provision in insurance policies as to

the dealing between the mortgagors and insurance companies and mortgagees.

In *Metropolitan Life Ins. Co. v. Mennonite Mutual Fire Ins. Co.*, 131 Kan. 628, 293 Pac. 402, we considered a case where the mortgagee brought an action to recover from an insurer after the building upon the real estate upon which it held a mortgage and which was insured by the insurer had been destroyed by fire. There were some circumstances which if true would have prevented the insurer from being liable to the insured. We held, however, as follows:

"Under the 'union mortgage clause' attached to the policy issued by the defendant in this case, which is set out in the opinion, it is held that the defendant insurance company is liable to the plaintiff mortgagee notwithstanding the failure of the mortgagor to pay the premium on the policy and other acts of the mortgagor referred to in the opinion which rendered the policy void as to the mortgagor." (Syl. ¶ 1.)

So in this case had the insurance company, the defendant here, refused to pay the mortgagee the amount of this mortgage the mortgagee could have brought an action and recovered on the policy. Instead of that the insurance company, defendant here, as was proper, recognized its liability to the mortgagee under the loss-payable clause and complied with its contract. Under the subrogation clause it had a right to bring an action to recover the amount that it was compelled to expend on account of the loss. That is what this counterclaim is. It does not, however, depend on the validity of the policy as between the insurer and insured. If the rule were not as has been stated it might happen that the plaintiff could recover the full amount of the policy in an action against the insurer. The insurer would be compelled to pay the judgment and then would be relegated to another action against the insured to collect the amount that it had paid the mortgagee. This would only make for a multiplicity of suits and would give no one a right which he does not now have. This conclusion requires that the order of the trial court sustaining the motion of plaintiff that the defendant be required to elect upon which of the defenses it would rely was wrong and should be reversed.

This takes us to the cross-appeal, wherein the plaintiff seeks to appeal from the order of the trial court overruling his motion for judgment on the pleadings. In this connection it should be noted that the plaintiff demurred to the counterclaim which was a part of the supplemental answer and this was overruled on February 12,

1943. This demurrer in terms was only directed at the counter-claim. It will be noted that the time within which to appeal from the order overruling the demurrer was past long before the plaintiff filed his cross-appeal. When the plaintiff filed his motion for judgment on the pleadings while that refers in terms to the answer as well as to the counterclaim, still the motion is directed solely at allegations of the counterclaim. Thus, it appears that the legal questions raised by the plaintiff in his motion for judgment on the pleadings were substantially the same as those raised in his demurrer to the counterclaim. *In Gas Service Co. v. Consolidated Gas Utilities Corp.,* 150 Kan. 715, 96 P. 2d 608, this court said:

"Appeal may not be taken from an order overruling a motion for judgment on the pleadings where a demurrer which raised the same question of law had previously been overruled and no appeal therefrom had been perfected in time." (Syl. ¶ 2.)

See, also, *Miller v. Sunflower Recreation Society,* 151 Kan. 930, 101 P. 2d 891, and *Sowers v. Wells,* 152 Kan. 122, 102 P. 2d 980. Following the rule laid down in those cases, we hold that the order overruling the motion for judgment on the pleadings in this case was not an appealable order and as to it the appeal should be dismissed.

The judgment of the trial court sustaining the motion of the plaintiff that the defendant be required to elect is reversed; the appeal from the order denying the plaintiff's motion for judgment on the pleadings is dismissed.