Vito J. Titone, J.
In this proceeding, the petitioners seek (1) to have set aside a determination of respondent Board of Standards and Appeals granting respondent Distrigas Corp. (Distrigas) permission to construct and use three tanks and related facilities on Staten Island for the storage of liquified gas (L.N.G.); and (2) for an injunction permanently restraining Distrigas from further construction and use bf such tanks and related facilities.
In view of the fact that the Federal Power Commission has recently conducted hearings with respect to the construction and *560 úse of the subject tanks, and the United States Court of Appeals for the District of Columbia Circuit has held that the commission acted within its authority in assuming jurisdiction over the terminal, the court at this time must ascertain whether or not it has jurisdiction to entertain petitioners’ application for injunctive relief.
Petitioners, who live in relative close proximity to the subject site on Staten Island, contend that the storage of liquified gas at the Distrigas facilities poses a reckless danger both to them and countless thousands of other residents of the borough. They assert that each tank has a capacity to hold 900,000 barrels of liquified gas, and that, when full, each would contain the destructive potential of 37 atomic bombs. They point out that an L.N.G. tank failure at a much smaller facility in Cleveland, Ohio in 1944, triggered a fire, the flames of which attained a height of 1,000 feet. In addition, secondary explosions therefrom leveled homes and stores in a one and one-half square mile area and killed 133 persons. The petitioners conclude that the tanks constitute an unwarranted hazard to life and property on Staten Island, and, therefore, should be located in a less populated area.
In opposition, Distrigas contends inter alia that the jurisdiction of this court to hear and determine the issue as to the safety of the tanks and the granting of the injunctive relief sought has been pre-empted by Congress under the Natural Gas Act (U. S. Code, tit. 15, § 717 et seq.); and that the Federal Power Commission, which is presently conducting hearings on the construction and operation of the tanks, has sole jurisdiction to pass on the safety issue.
It is true, as Distrigas asserts, that where Congress has clearly indicated that no regulation except its own is to be applicable, the Federal scheme prevails with respect to any matter in which the State or local authority might wish to assert its right to act (Rice v. Santa Fe Elevator Corp., 331 U. S. 218).
However, it is also a well-established principle of law that the exercise by a State or local authority of its police powers is superseded only where Congress has clearly manifested an intention in that regard, or where the conflict is so direct and positive that the Federal and non-Federal regulations cannot be reconciled (New York Cent. R. R. Co. v. Lefkowitz, 46 Misc 2d 68, mod. 28 A D 2d 735, mot. to dism. app. den. 20 N Y 2d 954, affd. 23 N Y 2d 1, app. dsmd. 393 U. S. 536; cf. Welch Co. v. New Hampshire, 306 U. S. 79; Cloverleaf Butter Co. v. Pattersoro, 315 U. S. 148).
*561 It is also settled law that Congress may, in a particular field, share its regulatory powers over interstate commerce with the States and its political subdivisions (Rice v. Santa Fe Elevator Corp., supra; cf New York State Natural Gas Corp. v. Town of Elma, 182 F, Supp. 1).
With respect to the issue presented herein, it has also been held that a State court may, without interfering unduly with interstate commerce, enjoin a person or corporation from committing certain acts within the State (Martin v. Dealers Transp. Co., 48 Tenn. App. 1).
In the instant case, it is manifest from the language contained in the Federal statute that Congress did not pre-empt the entire field with respect to the sale and distribution of natural gas in the several States. Thus, although Congress, under the Natural Gas Act, has pre-empted the regulatory powers of the States over the sale of natural gas for resale in interstate commerce (see Panhandle Pipe Line Co. v. Commission, 332 U. S. 507), it has also specifically excluded from Federal regulation: ‘ ‘ the local distribution of natural gas * * * the facilities used for such distribution * * * or * * * the production or gathering of natural gas ’ ’ (U. S. Code, tit. 15, § 717, subd. [b]; emphasis added; cf., Emerald Coal & Coke Co. v. Equitable Gas Co., 378 Pa. 591).
In addition, under the same statute (U. S. Code, tit. 15, § 717, subd. [c]) Congress further provided: “(e) The provisions of this chapter shall not apply to any person engaged in or legally authorized to engage in the transportation in interstate commerce or the sale in interstate commerce for resale, of natural gas received by such person from another person within or at the boundary of a State if all the natural gas so received is ultimately consumed within such State, or to any facilities used by such person for such transportation or sale, provided that the rates and services of such person and facilities be subject to regulation by a State commission. The matters exempted from the provisions of this chapter by this subsection are declared to be matters primarily of local concern and subject to regulation by the several States. A certification from such State commission to the Federal Power Commission that such State commission has regulatory jurisdiction over rates and service of such person and facilities and its exercising such jurisdiction shall constitute conclusive evidence of such regulatory power or jurisdiction.” (Emphasis added.)
In Power Comm. v. Panhandle Co. (337 U. S. 498, 513) the United States Supreme Court pointedly rejected the argument *562 that the Federal Power Commission had exclusive jurisdiction in all facets pertaining to the distribution and sale of natural gas when it stated inter alia: “The Natural Gas Act was designed to supplement state power and to produce a harmonious and comprehensive regulation of the industry. Neither state nor federal regulatory body was to encroach upon the jurisdiction of the other. ’ ’
In the past, Distrigas, far from contesting the right of a New York State agency to regulate and monitor its operations, has, in fact, strenuously endeavored to come within the aegis of the New York State Public Service Commission, and has succeeded in such endeavors. The record reveals that the respondent corporate entity petitioned the Public Service Commission for permission to construct the subject tanks, and that said agency issued to it a certificate of public convenience and necessity to construct and operate them. Included in Distrigas’ papers on its cross motion to dismiss the herein petition, is the following statement made by the State administrative body when it issued the requisite certificate for the erection of the subject tanks: “ Although Distrigas did not contest the jurisdiction of this Commission to issue a certificate of public convenience and necessity for the construction and operation of its Staten Island facility, the pending application by the company before the F.P.C. (Federal Power Commission) raises certain jurisdictional questions. * * * It is Staff’s opinion that even if the F.P.C. asserted jurisdiction on all sales through a determination that the importation of L.N.G. constituted interstate commerce this Commission could still assert safety jurisdiction under Section 66(5) of the Public Service Law ”. (Emphasis added.)
Subdivision 5 of section 66 of the Public Service Law, cited by the Public Service Commission, provides inter alia that: ‘1 whenever the commission shall be of the opinion, after a hearing, * * * that the property, equipment or appliances of any such person, corporation or municipality are unsafe, inefficient or inadequate, the commission shall determine and prescribe the safe, efficient and adequate property, equipment and appliances thereafter to be used, maintained and operated for the security and accommodation of the public and in compliance with the provisions of law and of their franchises and charters.”
It is also interesting to note that under subdivision 17 of section 66 of the Public Service Law a gas corporation transporting natural gas through this State, but which does not deliver or sell any of it to customers within this State, ‘ ‘ shall be subject to regulation by the commission only insofar as the *563 construction- and operation of such facilities shall affect matters of public safety.” (Emphasis added.)
Although the gas intended to he stored in the subject tanks admittedly will be imported from Algeria, it is the court’s opinion that once it reaches the Distrigas facilities on Staten Island, it will come to rest and then it will be subject to local regulation, since at this point the storage is an essentially local aspect of its business (Emerald Coal & Coke Co. v. Equitable Gas Co., 378 Pa. 591, supra). With respect to the eventual distribution of such stored gas, Distrigas, in its application to the Federal Power Commission, February 17, 1970 stated that the vast majority of liquified natural gas contemplated to be stored in the Staten Island tanks, would be sold to distributors and direct customers in this State.
Thus, since the record demonstrates that Distrigas is subject to the control and regulation of the State Public Service Commission with respect to the safety of the subject tanks and their related facilities, and has willingly submitted itself to such jurisdiction, and that the purpose of the Natural Gas Act was to supplement State power in this field, and not supplant it, it follows that this court has power to conduct an inquiry into the issue posed by the complaint now before it. Because of the purported dangerous nature of the acts sought to be enjoined herein, the court is convinced that under its equity powers, it has jurisdiction to entertain this injunction proceeding (Emerald Coal & Coke Co. v. Equitable Gas Co., supra).
The court is cognizant of the recent decision by the United States Court of Appeals for the District of Columbia Circuit, in Distrigas Corp. v. Federal Power Comm. (495 F. 2d 1057). The thrust of the Federal court’s determination in that case was that the Federal Power Commission acted within its authority in assuming jurisdiction over Distrigas ’ facilities on Staten Island. However, the Federal court held that under the circumstances the Federal Power Commission erred procedurally in determining that its certification of the facility was required under section 7 of the Natural Gas Act (U. S. Code, tit. 15, § 717f) since all imports of natural gas, whether destined for sale in the State of importation or other States, are interstate commerce as that term is defined in subdivision (7) of section 2 of the Natural Gas Act (U. S. Code, tit. 15, § 717a, subd. [7]). Instead of basing its jurisdiction on the interstate commerce theory, opined the Federal court, the Federal Power Commission should have cited section 3 of the Natural Gas Act (U. S. Code, tit. 15, § 717b) as the jurisdictional basis for issuing its order. Such *564 section provides inter alia that no person shall import natural gas from a foreign country without first securing an order from the Federal Power Commission upon application. Before issuing such order, the commission is required to conduct a hearing on the issue of whether the proposed importation would be consistent with the public’s interest.
Accordingly, the Federal court ordered the Federal Power Commission to conduct the hearing required by section 3, and that thereafter it supply findings and reasons to support its jurisdictional determination under section 3’s public interest standard.
This court does not believe that the Federal court’s decision just discussed, forecloses it from conducting a hearing on the issue as to the safety of the subject facility. First of all, nowhere in the decision is there a hint or suggestion that the Federal Power Commission’s assumption of jurisdiction herein has, a fortiori, pre-empted a State court or State administrative body from conducting an inquiry into such issue (cf. Power Comm. v. Panhandle Co., 337 U. S. 498, supra).
Secondly, the decision of the Federal Power Commission to assume jurisdiction wfth respect to the construction and operation of the facility resulted from a unique set of circumstances. Initially, the Federal Commission, by a 3 to 2 vote, held that Federal jurisdiction covered deliveries of liquified natural gas only until such time as it reached dockside and, thereafter, only when gas destined for interstate commerce, left the storage terminal. The minority took the position inter alia that the commission had jurisdiction with respect to the facility because the proposed operations constituted interstate commerce as defined in the Natural Gras Act. However, 14 months later, the position taken by the two-man minority, became a majority, by virtue of the fact that two commissioners of the previous three-man majority resigned. Thus, the assumption of jurisdiction by the commission at this time has resulted primarily because of the attrition of its membership. It is conceivable that in the foreseeable future, the President might fill the two vacancies with individuals whose views coincide with those who were previously in the majority. It is extremely doubtful that such tenuous assumption of jurisdiction by the Federal Power Commission constitutes clear evidence that this court has been pre-empted in the within action.
If should also be noted that Distrigas has taken a position before both the Federal Power Commission and the Federal court which is diametrically in opposition to the one taken by *565 it before this court. In Washington, Distrigas contended that the Federal Power Commission had no jurisdiction to pass on the safety of the subject facility, while in the instant case, it argues that this court is pre-empted by the Federal agency.
While it does not so hold at this time, this court raises the question as to whether Distrigas should be estopped from pursuing its present position in this court. (See Pounds v. Jenkins, 157 S. W. 2d 173 [Tex. Civ. App.] ; Drewicki v. Fidelity & Guar. Fire Corp. of Baltimore, 157 Kan. 569.) It is highly questionable whether Distrigas should be permitted to play one court off against another. At the present time, it seems to be talking out of both sides of its corporate mouth and carrying liquified gas on both of its corporate shoulders.
Accordingly, this court is of the opinion that it has jurisdiction to conduct a hearing on the petitioners’ application for injunctive relief. The matter is set down for such hearing for July 10,1974 at 10 a.m.